Harold J. McCormick, Petitioner-Appellee and Cross-Appellant, v. Statler Hotels Delaware Corporation, a Delaware Corporation, and William J. Friedman, Defendants-Appellants and Cross-Appellees.

Gen. No. 49,463.

First District, Second Division.

December 29, 1964.

Friedman, Koven, Salzman, Koenigsberg, Specks & Homer, of Chicago (John W. Day and Stanley R. Zax, of counsel), for defendants-appellants.

White, Shaheen, and Lundberg, of Chicago (Roger Q. White and John M. Kaveny, of counsel), for petitioner-appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an appeal and cross-appeal from a judgment entered October 2, 1962, in the Circuit Court of Cook County, Illinois. The matter was transferred here from the Supreme Court of Illinois after it determined there was no reasonable constitutional issue presented.

The case arose when the petitioner-appellee and cross-appellant, hereinafter referred to as McCormick, a resident of California, sought a writ of mandamus against the Statler Hotels Delaware Corporation, hereinafter called Statler, and its secretary, William J. Friedman, a resident of Illinois. McCormick asked the Court below to order that Statler and Friedman make the list of Statler stockholders available for inspection, and also asked for the imposition of a penalty under Ill Rev Stats 1959, c 32, § 157.45, in the amount of $4,425, that being ten per cent of the value of his stock.

The Court below heard the case without a jury and entered a judgment for McCormick in the sum of $2,000, but it did not grant the writ of mandamus. Statler appeals from the judgment ordering it to pay $2,000 while McCormick has filed this cross-appeal asking that the penalty be raised to $4,425, and that a writ of mandamus be issued.

The following stipulation was made by the parties at the time of the trial:

"1, that petitioner has been a record stockholder of six thousand shares of the defendant

23

corporation for more than six months prior to the request to examine the stock records.

"2, that at all pertinent times, Statler has been duly registered in Illinois as a foreign corporation and duly licensed and authorized by the State of Illinois to transact business in Illinois.

". . .

"4, on October 21, 1959, Roy R. Ziv, attorney and agent for the petitioner herein, delivered to the defendant, Friedman, a Power of Attorney, authorizing the said Roy R. Ziv to examine the stock transfer records of Statler;

"That said Ziv at said time requested said defendant, Friedman, to permit him to examine said stock transfer records and said request was refused by defendant, Friedman, on October 21, 1959;

"5, that Petitioner was the owner of six thousand shares at the time of said request and that the market value of said six thousand shares at that time was $7.373 per share."

An official financial statement of Statler states that all the hotels belonging to Statler are leased to the Hilton Hotels Corporation. The lease between Statler and Hilton was entered into on October 27, 1954. The lease is to run for 17 years from that date, beginning with a yearly rental of $7,500,000 and declining yearly until the ninth year, when the rent would be $5,000,000, which rental would remain constant until the expiration of the lease in 1979.

When Statler was formed in 1954, it was set up to be a corporation that would do nothing more than hold title to property and lease the property to Hilton. The terms of the lease were described in detail in the Statler prospectus. McCormick admits that he only glanced at the prospectus when he received it, and

24

that he bought the shares without reading the prospectus carefully. It was anticipated when Statler was formed that there would be considerable tax savings, and the success of the venture depended on a favorable ruling by the Internal Revenue Service. As the matter turned out, the Service did not hand down a favorable ruling, and the investment proved to be a bad one.

Statler points out McCormick could and should have known of this dependence on a favorable tax ruling. This was pointed out in the prospectus and it is claimed we should not allow him to say he did not know the true state of affairs. Statler also stresses that McCormick has long been in the hotel business and was a vice-president and general manager of the Pick Hotel Corporation. Being a man of some knowledge in business affairs, McCormick, according to Statler, should be held to a standard of care for his own welfare appropriate to a man of his experience.

McCormick replies that the fact Statler did not even go to court to try to have the tax ruling set aside indicates that the plan was indefensible and that the directors of the corporation should have known of this, and apparently, claims they were remiss in using this tax plan as the basis for setting up Statler.

McCormick first bought Statler shares when he was given a warrant for the purchase of 400 shares at $6.42 per share. He received this warrant because he was a stockholder of Hilton, each holder of shares in the Hilton corporation being given an opportunity to purchase one share of Statler for each share of Hilton he owned. From the time he exercised his option in 1957 until June 1959, he took no interest in the Statler affairs other than to mail in his proxies in favor of management for each of the annual share-

holders' meetings. McCormick did not attend a stockholders' meeting until 1961.

In addition to the original 400 shares he bought with his warrant, McCormick bought an additional 5,000 shares because (according to Statler) of a rumor he heard in a board room of what is now Merrill Lynch, Pierce, Fenner and Smith. McCormick points out that the source of the rumor was Mr. Hilton.

On June 1, 1959, a notice was sent to shareholders of Statler which read in part, "As a result of the tax consequences to the Corporation described above, the Corporation may be required to substantially reduce or withhold future distributions in order to meet the tax payments which will become payable." McCormick and Statler then exchanged several letters, finally culminating in this action to see the shareholder lists so that communication might be made with other shareholders to discuss the company's condition. During this period, he purchased several hundred more shares of Statler stock. It is claimed this was done because the stock was so depressed there was very little to lose and quite a bit to gain if the anticipated lawsuit were successful. After this action was begun, McCormick sold all his shares to Hilton as part of a merger of the two corporations.

Statler admits that it would not let McCormick see the shareholder lists. It claims that the case became moot when he sold his shares, that the imposition of a penalty under Ill Rev Stats 1959, c 32, § 157.45, constitutes the regulation of the internal affairs of a foreign corporation within the meaning of Ill Rev Stats 1959, c 32, § 157.102, and that the petitioner did not seek the lists for a proper purpose.

On his cross-appeal, McCormick claims that he should have been awarded a sum of money equal to ten per cent of the value of the shares he owned, and that even though he sold his shares, he is entitled to

have issued a writ of mandamus ordering Statler to make its shareholder lists available to him.

Ill Rev Stats 1959, c 32, § 157.45, reads in part as follows:

> "Each corporation shall keep correct and complete books and records of account and shall also keep minutes of the proceedings of its shareholders and board of directors; and shall keep at its registered office or principal place of business in this State, or at the office of a transfer agent or registrar in this State, a record of its shareholders, giving the names and addresses of all shareholders and the number and class of the shares held by each. Any person who shall have been a shareholder of record or the holder of a voting trust certificate for at least six months immediately preceding his demand or who shall be the holder of record of at least five per cent of all the outstanding shares of a corporation, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its books and records of account, minutes and record of shareholders and to make extracts therefrom. A record of shareholders certified by an officer or transfer agent shall be competent evidence in all courts of this State.
>
> "Any officer, or agent, or a corporation which shall refuse to allow any such shareholder or such holder of a voting trust certificate, or his agent or attorney, so to examine and make extracts from its books and records of account minutes, and record of shareholders, for any proper purpose, shall be liable to such shareholder or such holder of a voting trust certificate in a penalty of ten per cent of the value of the shares owned by such shareholder or ten per cent of the value of the beneficial interest owned by such voting trust

27

certificate holder in addition to any other damages or remedy afforded him by law. . . .

"Nothing herein contained shall impair the power of any court of competent jurisdiction, upon proof by a shareholder of proper purpose, irrespective of the period of time during which such shareholder shall have been a shareholder of record, and irrespective of the number of shares held by him, to compel by mandamus or otherwise the production for examination by such shareholder of the books and records of account, minutes and record of shareholders of a corporation."

 The first point we shall consider is whether the case became moot when McCormick sold his shares to the Hilton corporation. Statler cites Goldberg v. Ball, 305 Ill App 273, 27 NE2d 575 (1940). That case held that a shareholder cannot sue for malfeasance on the part of the directors of a corporation which occurred prior to the time he acquired his stock unless he can show the wrong was a continuing one. While we agree with that opinion, we do not feel it is determinative of the case at bar. There is no question here but that the petitioner in this case was a stockholder at the time Statler refused him permission to see the shareholder lists.

McCormick urges the case of Vigran v. Hamilton, 321 Ill App 541, 53 NE2d 250 (1944). In that case, the plaintiffs sought the ten per cent penalty for refusal of the corporation to permit them to see the books and records of the corporation. The court said at page 552 of the official reports, "Plaintiffs' causes of action arose under the statute heretofore set forth, when their rightful demands for permission to inspect the books and records of defendant corporation were wrongfully refused by the individual defendants on their own behalf and on behalf of said corporation,

and neither the subsequent settlement of the consolidated suits, and neither the subsequent dissolution of defendant corporation, the receipt by plaintiffs of their distributive shares of the assets of said corporation, the fact that plaintiff Denton might have thereafter transferred her stock, nor the further fact that plaintiffs held no certificates of stock in defendant corporation (same having been theretofore dissolved) when the action was instituted, can affect or defeat their right to recover in this case."

 It seems clear, therefore, that one need not be a shareholder of a corporation at the time the case comes to trial, or even at the time the suit is filed. A properly qualified shareholder has a cause of action if he is refused permission to see the books and records for a proper purpose. What he does with the stock thereafter does not matter so far as the penalty is concerned. The ten per cent fine is in the statute to punish corporate officers or a corporation which violates its legal duty to a shareholder to permit such shareholder to use the corporate books and records, including stockholder lists, for a proper purpose. That duty is breached when the refusal is made. A shareholder does not waive his right to sue for this breach of duty by subsequently selling his stock anymore than one waives the right to sue for damages done to an automobile when he sells his car. The case is not a moot one.

Statler offers the defense that McCormick did not seek the lists for a proper purpose. In support of this conclusion it cites Sawers v. American Phenolic Corp., 404 Ill 440, 89 NE2d 374 (1949). In that opinion, the Supreme Court stated:

> "To maintain the proper purpose required by statute some effort should be made by the shareholder to determine the condition of corporate af-

fairs of the corporation in which he is interested. This effort could be shown by attendance at shareholders' meetings, examination of the books and records of the corporation and from evidence of effort on the part of the shareholder to determine the financial situation and the character of management of the corporation in question. . . ."

From this statement, and from the fact that McCormick did not attend shareholders' meetings, Statler seeks to establish a lack of proper purpose. In the Sawers case, the petitioner was invited to discuss the affairs of the company with its officers, but never did so. He never asked anyone about the affairs of the company and he never attended shareholders' meetings. The petitioner offered no reasonable explanation of why he wanted the shareholder lists. The Supreme Court said he could not conduct a fishing expedition through the corporate records.

In this case, on the other hand, McCormick tried to determine the condition of the corporation through an exchange of correspondence with corporate officials. The mere fact that he did not attend shareholders' meetings does not lead us to believe that he seeks the lists for the sole purpose of blackmailing the managements of Hilton and Statler, as Statler seemingly would have us believe.

To support McCormick's claim of a proper purpose are the following facts: Statler and Hilton corporations have the same president, the secretary and registered agent of the two corporations are the same person, the corporations share a large number of the same directors. The claim is made, "Since the Hilton Hotels Corporation derives the benefit of all the properties of the defendant corporation, the financial interest of the substantial stockholders of the Hilton Hotels Corporation (who control the defendant corpo-

30

ration) is in conflict with that of the defendant corporation."

■ Without coming to any conclusions of our own on the allegation of conflict of interests, we feel McCormick made a reasonable case for contacting the other shareholders to discuss the company's condition. The Court below found there was a proper purpose in seeking the shareholder lists. To upset this finding we would have to hold that it was against the manifest weight of the evidence. City of Chicago v. Miller, 27 Ill2d 211, 188 NE2d 694 (1963). We have no basis for doing so in this case.

Having determined that McCormick sought the lists for a proper purpose, and Statler having admitted that it refused to allow him to see the lists, we now come to the question, to what remedy is he entitled? In this situation the statute says an officer or corporation, ". . . shall be liable . . . in a penalty of ten per cent of the value of the shares owned by such shareholder . . ." The question here is the meaning of "shall be liable."

Statler has called our attention to People v. Elgin Home Protective Ass'n, 359 Ill 379, 194 NE 584 (1935). The Supreme Court said in that case, "The words 'may' and 'shall' when used in a statute, will sometimes be read interchangeably, as will best express the legislative intent." On this basis, it is possible for us to find that the imposition of a penalty rests in the discretion of the Court below.

We can reach this same result through interpreting the word "liable." Being liable for a ten per cent penalty could mean the defendants are subject to a fine *up to* ten per cent of the value of the stock owned by McCormick. It has been held: " 'subject to a penalty' is but a synonym for 'liable to a penalty', and does not import the penalty *need* be imposed on the

master before the vessel shall pay." (Emphasis supplied.) The Motorboat, 53 F2d 239, DCNJ (1931).

■ Here, a stockholder asked a corporation for its shareholder lists. The corporation refused on the ground that he did not have a proper purpose. Did the legislature intend in a case where it was not blatantly obvious the stockholder had a proper purpose, that the corporation must give him the list or risk a ten per cent penalty even if it were acting in the best of faith? We think not. A corporation acting in the highest good faith could decide a shareholder did not seek its books and records for a proper purpose, and yet a court could come to the opposite conclusion. It seems unjust to say that as a matter of law a corporation must pay what in some cases could be a very sizeable penalty because it made a wrong guess as to what a court would decide. Surely a trial judge has it in his power to reduce the penalty from the ten per cent maximum in a proper case, and we have been presented with no evidence nor any convincing argument to rebut the presumption that the Court below acted properly in this matter. Whitney v. Madden, 400 Ill 185, 79 NE2d 593 (1948).

■ ■ McCormick next argues that he is entitled to the shareholder lists even at this time, when Statler has been merged into Hilton. A writ of mandamus is not given as a matter of right; the matter is one resting within the sound discretion of the Court below. People ex rel. Bradley v. McAuliffe, 24 Ill2d 75, 179 NE2d 616 (1962). We have been shown no basis for disturbing the disposition of this matter. It was perfectly possible for the Court below to grant McCormick a penalty for the breach of duty owed to him and yet find he could not have the records at this point. As pointed out above, the penalty was imposed because of a breach of duty, and the breach took place when Statler refused McCormick access to the lists.

32

But that is a different question from whether or not McCormick still has a right to see the lists. While he may have had a proper purpose at the time he originally sought the lists, we cannot see what purpose he could have in doing so now. There are other suits pending in this matter, and it seems the rights of all parties will be fully protected. We feel, therefore, that the Court below acted properly in denying him access to the shareholder lists.

Finally, Statler has urged that the application of Ill Rev Stats 1959, c 32, § 157.45 cannot be applied to it since it is a foreign corporation and this constitutes interference by this state in its internal affairs contrary to Ill Rev Stats 1959, c 32, § 157.102. That section states in relevant part: ". . . Nothing in this Act contained shall be construed to authorize this State to regulate the organization or the internal affairs of such corporation."

This question seems never to have come before the courts of this State before. The question is simply whether making a foreign corporation show its shareholder lists to properly qualified people for a proper purpose is interfering in the internal affairs of such corporation. We think it is not.

It seems that things properly considered internal affairs would be the minimum and maximum number of members on the board of directors, the question of when and how dividends may be paid, or the rights of each class of shareholder, to give a few examples. Section 157.45 passed to protect shareholders, and the need for protection is the same whether the business was incorporated in this State or in another.

Foreign corporations are required to have these lists with their registered agent in this State so that they will be available for inspection. ". . . it is the general rule that the books of a foreign corporation are subject to inspection by stockholders, if such books are

33

kept or are available within the State, and that the courts of the State will enforce the right of inspection in proper cases. *Enforcement of this right . . . does not constitute interference with the internal affairs and management of the foreign corporation.*" (Emphasis supplied.) Fletcher, Cyclopedia of the Law of Private Corporations (1960 Ed), Vol 17, § 8434. This treatise cites cases from nine jurisdictions which support the rule. These jurisdictions include Delaware, Massachusetts, New York and Pennsylvania—all states with courts having broad experience in commercial matters. We have read and support their opinions in this matter, and we will abide by the rule that this does not constitute interference in the internal affairs of a foreign corporation.

The judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and FRIEND, J., concur.