WOOD, WALKER & CO., a Partnership, by John C. Tilney, individually and as a partner of Wood, Walker & Co., et al., Plaintiffs-Appellants,

v.

Fred M. EVANS et al., Defendants-Appellees.

No. 71–1511.

United States Court of Appeals, Tenth Circuit.

May 23, 1972.

Rehearing Denied June 12, 1972.

Arnold C. Wegher, of Hindry & Meyer, Denver, Colo., for plaintiffs-appellants.

Warren O. Martin, of Berge, Martin & Clark, Denver, Colo., for defendants-appellees.

Before PICKETT,* HILL and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

In this diversity action the plaintiffs, shareholders of Equity Oil Corporation, sought and obtained an order in the district court, 300 F.Supp. 171, allowing the inspection and copying of the Equity shareholders' list. The suit also sought damages in the form of a statutory penalty which is provided in the same Colorado statute, § 31–5–17.

On this appeal we are not concerned with the part of the judgment granting to plaintiffs the right to examine and copy the shareholders' list. It is the refusal of the court to award a money judgment which is here in issue. The trial judge awarded actual damages in the amount of $386.63 and at the same time refused plaintiffs' demand for imposition of the statutory penalty in an amount in excess of $40,000.00 (ten percent of the value of the shares owned by plaintiffs). The sole issue here is whether the trial court erred in its refusal to award to the plaintiffs the statutory penalty which it demanded. It is our opinion that the trial court's judgment was correct and we affirm it.

The facts are relatively simple. The annual meeting of Equity was scheduled to be held on May 10, 1969. Plaintiffs, shareholders of Equity, in anticipation of a proxy fight at the annual meeting, started on or about April 1, 1969 to work to obtain a shareholders' list. On April 1 plaintiffs wrote to Equity at its Salt Lake City headquarters demanding that they be allowed to examine and copy the most current list of stockholders of Equity Oil Corporation. This notice was given pursuant to C.R.S.1963 § 31–5–17, which section gives to a shareholder of record for at least six months, or holding at least five percent of all outstanding stock of the corporation, the right to examine the books of the corporation at a reasonable time or times.[1]

In the April 1 letter sent by one of plaintiffs' counsel, Mr. Wegher, the dates of April 3 and 4 during regular business hours were given as the times

---

* Due to his illness Judge Pickett has not concurred in this opinion, but has concurred in the result.

1. C.R.S. § 31–5–17, Books and Records (in the Colorado Corporation Code), reads in pertinent part as follows:

31–5–17. Books and records.—(1) Each corporation shall keep either within or without Colorado complete books and records of account and shall keep minutes of the proceedings of its shareholders and board of directors; and shall keep at its registered office or principal place of business, or at the office of its transfer agent or registrar either within or without Colorado, a record of its shareholders, giving the names and addresses of all shareholders and the number and class of the shares held by each.

(2) Any person who shall have been a shareholder of record for at least six months immediately preceding his demand or who shall be the holder of record of at least five per cent of all outstanding shares of a corporation, upon written demand stating the purpose thereof, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its books and records of account, minutes and record of shareholders and to make extracts therefrom.

(3) Any officer or agent who, or a corporation which, shall refuse to allow any such shareholder, or his agent or attorney, so to examine and make extracts from its books and records of account, minutes, and record of shareholders, for any proper purpose, shall be liable to such shareholder for a penalty of ten per cent of the value of the shares owned by such shareholder, in addition to any other damages or remedy afforded him by law. It shall be a defense to any action for penalties under this section that the person suing therefor has within two years sold or offered for sale any list of shareholders of such corporation or any other corporation or has aided or abetted any person in procuring any list of shareholders for any such purpose, or has improperly used any information secured through any prior examination of the books and records of account, or minutes, or record of shareholders of such corporation or any other corporation, or was not acting in good faith or for a proper purpose in making his demand.

when plaintiffs desired to inspect and copy the shareholders' list. The reason that plaintiffs chose April 3 was because Wegher and the plaintiff Patton were planning to be in Salt Lake City on April 3 for the purpose of taking the deposition of Mr. Dougan, the secretary of Equity. This was in connection with another suit. At this deposition Wegher talked to Equity's attorney regarding the demand for inspection. Also, in connection with Mr. Dougan's deposition, the letter of demand was read into the record. Finally, on the evening of April 3 Patton sent telegrams of demand to all persons to whom the letter of April 1 had been mailed.

On April 4 Mr. Wegher went to the office of Equity in Salt Lake City to carry out the inspection and copying of the list. Present in the office was one A. K. Clayton, the assistant secretary of Equity. He stated that he did not have the authority to make the list available and that no one was present in the office who did. Mr. Wegher returned on Saturday, but was still unable to get the list.

From the evidence presented, the letter of demand was not received by any officer of Equity until Monday, April 7. The exact cause of their failure to receive this letter mailed April 1 is not apparent. The record suggests that it was due to the absence of the officers from the office and perhaps to delays in the mail.[2] It does seem apparent that the officers of Equity were not exactly cooperative by making themselves available to receiving notices.

On April 8, 1969, the present suit was commenced. The trial court granted the mandatory injunction without delay finding that plaintiffs had been wrongfully denied access to the list and also finding bad faith on the part of Equity in failing to furnish the list. The court went on to determine that the plaintiffs had also acted in bad faith and were thereby precluded from enforcing the penalty. Following the entry of this judgment plaintiffs objected to the court's considering their good faith or bad faith, contending that this was not in the pleadings. Thereupon the court reopened the judgment and heard plaintiffs' further evidence regarding their good faith.[3] In a second memorandum opinion, filed on June 29, 1971, the trial court carefully analyzed the evidence and adhered to its previous ruling.

The essential thrust of the plaintiffs' position on this appeal is that the defendants were in clear violation of the statute, whereby plaintiffs are entitled not only to the relief granted, namely the mandatory injunction, but are also entitled to recover the penalty in the amount of $40,000.00 plus. Plaintiffs further contend that the trial court improperly considered the issue of their good faith, but in any event that the court's finding was contrary to the evidence in the case and, therefore, the cause should be reversed with directions to the trial court to enter judgment in the full amount.

We need not determine whether the pretrial order was sufficiently broad to justify the court's considering the good faith issue, nor is it necessary to decide whether the statute contemplates barring a recovery for lack of good faith in a fact situation such as that before us, wherein the plaintiffs filed suit without perhaps fully exhausting other efforts. Moreover, we do not

---

2. The evidence did establish that Equity's President, Mr. Evans, who was ordinarily locatable at the company's offices, had arranged business in Denver on Thursday, April 3 specifically because he knew Mr. Wegher and others opposed to his stewardship of Equity would be in town in connection with the deposition of Mr. Dougan. There is no evidence that he had any knowledge of the demand for inspection prior to the beginning of the following week. On the crucial day, April 4, he was skiing.

3. The court apparently proceeded under Rules 52(b) and 59(e) since it altered the judgment and findings in part. The procedure thus followed was designed to protect the interest of the parties and was within the authority of the court.

hold, as defendants would have it, that the statute is a penal one in the sense that the federal court will under no circumstances enforce it. We need not reach the foregoing questions because in our view the trial court had a discretion to refuse to award the statutory penalty. We cannot agree with plaintiffs that upon making a finding of the existence of the basic conditions required for corporate liability under § 31–5–17, the court must proceed automatically and mechanically to award the full penalty. It is true that the statute declares that the corporation and/or its officers shall be liable for the penalty, but the courts which have directly considered the issue have held that use of the word "shall" in this context does not mean that the *amount* is mandatory, but rather means that the corporation and its officers are thereby mandatorily *subjected* to liability. The courts have always been guarded about imposing liability based on failure to comply with a duty imposed by statute where the amount of the damage is fixed on a somewhat liquidated measure without regard to injury suffered. Such statutes are strictly construed. See Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892).[4]

Thus in McCormick v. Statler Hotels Delaware Corporation, 55 Ill.App.2d 21, 203 N.E.2d 697 (1964), the court had before it an Illinois statute which is virtually identical to that of Colorado. Had the full amount of the penalty been imposed in that case the judgment would have been in the amount of $4,425.00. However, the trial court had awarded $2,000.00 rather than the entire ten per

cent. In affirming this award the Illinois appellate court stated:

Surely a trial judge has it in his power to reduce the penalty from the ten per cent maximum in a proper case, and we have been presented with no evidence nor any convincing argument to rebut the presumption that the Court below acted properly in this matter. (203 N.E.2d at 702).

The reasoning was that the insertion of the word "liable" in the statute served to indicate that the defendants were subject to an assessment *up to* ten percent of the value of the stock owned. To the same effect is Smith v. Chauvin, 212 So.2d 498 (La.Ct. of Appeals, 1968).

We fully understand the trial court's reluctance to impose the penalty in the full amount under the facts of this case. The circumstances did not justify it, and the trial court was not inaccurate in observing that the plaintiffs may have been more anxious to have the lawsuit than the list.

The plaintiffs have cited no cases which support their position that the full amount of the prescribed penalty is to be granted on any kind of push-button basis. To so construe such a statute would be irrational and inequitable. The main purpose of the statute is, after all, to emphasize that the right to the list of shareholders is clear and unequivocal. As an aid in the enforcement of the statute the penalty is authorized, but this is a secondary and not a primary aspect and purpose.

We hold then that under C.R.S. § 31–5–17 the trial court may award a

---

4. See also Brown v. Kildea, 58 Wash. 184, 108 P. 452, 453 (1910); Moore v. Institute of Educational Travel, Inc., 89 Misc. 369, 151 N.Y.S. 929 (1915), and Hub Const. Co. v. New England Breeders' Club, 74 N.H. 282, 67 A. 574 (1907); *cf.* Interstate Savings & Trust Co. v. Wyatt, 63 Colo. 1, 164 P. 506 (1917), affg. 27 Colo.App. 217, 147 P. 444 (1915). In Brown, *supra*, the Court said:

\* \* \* We agree with the learned trial court that a statute may be penal in part and remedial in part. The reme-

dial part of this statute, however, is the provision for the recovery of actual damages. The penalty is not imposed as compensation, but as a part of the punishment of the offending officer. A statute which subjects one person to the payment of a sum of money to another, without reference to any actual injury and without requiring him either to allege or prove an actual injury, is a penal statute. \* \* \*

108 P. at 453.

penalty in a sum up to ten percent of the value of the plaintiffs' shares in the exercise of sound discretion. On the other hand, the court is at liberty to withhold the award of the penalty if in view of all the circumstances the award of such damages would not serve the ends of justice. The trial court's view was that an award of the actual damages incurred in the trip to Salt Lake City would be sufficient. We are unable to say that this was an abuse of discretion.

The judgment is affirmed.