Stephen P. KUPIEC and John E. Cihocki, Plaintiffs-Appellees,

v.

REPUBLIC FEDERAL SAVINGS AND LOAN ASSOCIATION and Otto C. Martinek, Defendants-Appellants.

No. 74–1835.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1974.

Decided March 4, 1975.

Fredric G. Novy, James W. Ashley, Chicago, Ill., for defendants-appellants.

Mark Van Ausdal, Gerald J. Muller, Chicago, Ill., for plaintiffs-appellees.

Before FAIRCHILD, Chief Judge, and PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

The issue presented in this appeal is whether the Federal Home Loan Bank Board's Bylaw (g), as set forth in Regulation 544.6(g), 12 C.F.R. § 544.6(g), when adopted by a federal savings and loan association, is the sole and exclusive means of communication between members of the association,[1] and, if so, whether the bylaw is unreasonable or infringes on the constitutional rights of the members.

The plaintiffs, Stephen Kupiec and John Cihocki, are members of the defendant Republic Federal Savings and Loan Association (Republic) by reason of being holders of savings accounts at Republic. 12 U.S.C. § 1464(b)(1). The defendant Republic is a federally chartered savings and loan association, organized and chartered under 12 U.S.C. § 1464 and having its office in Chicago, Illinois.

The defendant Otto C. Martinek is president and chief executive officer of Republic.

The plaintiffs brought this action for injunctive and declaratory relief seeking access to the membership list of Republic. Jurisdiction was invoked under 28 U.S.C. § 1331 and § 1337.

In 1965 the Federal Home Loan Bank Board (the Board) promulgated Regulation 544.6(g), which set forth Bylaw (g) and authorized and preapproved the adoption of this permissive bylaw by federal savings and loan associations. Bylaw (g), the full text of which is set out as an appendix to this opinion, contains a procedure by which the members of an association can communicate with one another by mail concerning matters which may properly be considered at a meeting of the members. Prior to the filing of the instant action, the directors of Republic had adopted Bylaw (g).

The district judge denied the plaintiffs' motion for a preliminary injunction on the ground that the plaintiffs should first attempt to comply with Bylaw (g) before seeking access to the membership list.[2]

Subsequently, the plaintiffs filed a second amended complaint. In this complaint, the plaintiffs alleged that as well as being members of Republic they are also both members of the Southwest Community Congress (SCC), a not-for-profit corporation composed of community organizations operating in the area in which Republic has its office. According to the second amended complaint, the plaintiffs, in conjunction with other SCC members who are also members of Republic, will nominate two persons for director at the next annual meeting of Republic in March 1975. The plaintiffs seek such representation on the Republic board "in order that Republic Federal

1. The reference to "the sole and exclusive means of communication between members of the association" is not quite apt but it is a shorthand reference to the limitation proposed by Bylaw (g) on the use of the membership records of the association in connection with communication. As will be indicated hereinafter, there is no stricture upon any member of the association communicating with any other member or members known to the communicator to be a member or members.

2. Kupiec v. Republic Federal Savings and Loan Ass'n, 373 F.Supp. 1382 (N.D.Ill.1974).

become more responsive to its immediate geographical area, particularly in terms of making loans available within that community." The plaintiffs further alleged that they desire to solicit, through mailings and personal contact, the votes of other members of Republic. The plaintiffs, according to the complaint, investigated the possibility of utilizing the method of communication set forth in Bylaw (g) "but had to abandon said method because of excessive costs."[3]

In a hearing before the district judge, witnesses for the plaintiffs testified that not only would the procedure outlined in Bylaw (g) be too costly for SCC, but in addition, they could not effectively convey their message by using Bylaw (g). To be effective, according to these witnesses, they needed face-to-face conversations with Republic members as well as written communications.

On the basis of the second amended complaint, certain affidavits, and the hearing, the district court granted the plaintiffs' motion for summary judgment and denied the defendants' motion to dismiss the second amended complaint.[4] The district court held that, under federal common law, the plaintiffs, as members of Republic, have a right to inspect and copy Republic's membership list and that Bylaw (g) did not preempt this common law right. The defendants appeal.

### Preemption

The Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 et seq., establishes the Federal Home Loan Bank Board and provides that the Board "is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations', and to issue charters therefor . . . ." 12 U.S.C. § 1464(a). Pursuant to this authority, the Board has promulgated comprehensive rules and regulations concerning the powers and operations of every federal savings and loan association "from its cradle to its corporate grave." Meyers v. Beverly Hills Federal Savings & Loan Ass'n, 499 F.2d 1145, 1147 (9th Cir. 1974).[5]

Bylaw (g) essentially provides that a member may communicate with other members by furnishing the association with a copy of the communication. The association then mails the communication to its members, unless the communication is "made for an improper purpose." Prior to the promulgation of Bylaw (g), the federal laws and regulations were silent with respect to the right of a member of a federal savings and loan association to inspect and copy the association's membership list and failed to provide any means by which a member could communicate with other members.

The district court relying on Murphy v. Colonial Federal Savings & Loan Ass'n, 388 F.2d 609 (2d Cir. 1967); Durnin v. Allentown Federal Savings & Loan Ass'n, 218 F.Supp. 716 (E.D.Pa. 1963), and Ochs v. Washington Heights Federal Savings & Loan Ass'n, 17 N.Y.2d 82, 268 N.Y.S.2d 294, 215 N.E.2d 485 (1966), held that, under federal common law, a member of a federal savings and loan association had a right to inspect or copy a membership list in order to solicit votes of other members for the election of directors.[6] The district court further held that Bylaw (g) did not supersede this federal common law right:

> "The Court is unaware of any authority which states that the Federal Home

---

**3.** In their original complaint, the plaintiffs had requested that Republic provide them with a list of its membership. In their amended complaint, the plaintiffs sought only to inspect and copy the membership list.

**4.** Kupiec v. Republic Federal Savings and Loan Ass'n, 384 F.Supp. 1008 (N.D.Ill.1974).

**5.** "Banking is one of the longest regulated and most closely supervised of public callings." Fahey v. Mallonee, 332 U.S. 245, 250, 67 S.Ct. 1552, 1554, 91 L.Ed. 2030 (1947).

**6.** The United States League of Savings Associations, in its amicus brief, and Republic, implicitly, dispute the district court's holding that there is a federal common law right to inspect the membership list. However, given our conclusion on the question of preemption, we need not determine the matter of what the federal common law is in this area.

Loan Bank Board's Regulation 544.6(g) preempts the federal common law. If the Federal Home Loan Bank Board had wished to suggest that its new form bylaw provided the exclusive rights to members wishing to communicate with other members, when these rights were quite different and far narrower than the right of a 'reasonable opportunity to ascertain the names and addresses of electors known to the management,' as described in *Murphy*, 388 F.2d at 612, it simply would have stated so." 384 F.Supp. at 1009.

█ A review of the wording, prior drafts, and Board interpretations of the bylaw convinces us that the district court erred in its conclusion.

After guaranteeing that "[e]very member shall have the right to communicate with other members in relation to any matter which may properly be considered at a meeting of members," the bylaw proceeds to describe in detail only one means of communication—a mailing by the association of submitted written material. No indication is given in the bylaw that in addition to this carefully detailed procedure, the members retain the right to inspect and copy the membership list.

Additional evidence that Bylaw (g), when adopted by an association, was meant to provide the exclusive means of communication between members is found by comparing the first and final drafts of the bylaw. The first draft provided that in lieu of the mailing by the association, the association could "furnish or make available to the member a current list of the names and addresses of all members of the association." 30 Fed.Reg. 8698 (1965). In the final draft of the bylaw however, this disclosure provision had been deleted.

█ Finally, on two separate occasions the Board has expressly stated that the bylaw was intended, when adopted, to supersede any common law right. When faced with a problem of statutory construction, great deference should be shown to the interpretation given the statute by the agency charged with its administration. "When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order." Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

In an opinion dated November 21, 1968, the Board stated:

"It was the purpose of the Board in authorizing this bylaw amendment to provide a fair, effective and orderly means of communication between members of a Federal savings and loan association. *It was intended that such bylaw, if adopted by a Federal association, provide the sole authorized means by which a member of the association may communicate in writing with the membership. In particular, the bylaw is intended to provide for proxy solicitations by members, thus obviating any need which otherwise might exist for a membership list or for copying such information from the association's records.* Further, the bylaw provision enables the solicitation of proxies to be carried out without the risk of harm to the association which might be caused by members who seek the identity of other members under the guise of proxy solicitation, but with the intention of utilizing the information thus obtained for improper purposes." (Emphasis added.)

Following the issuance of the district court's opinion and order in this cause, the Board issued a formal interpretative Ruling reaffirming its 1968 opinion. After quoting from its 1968 opinion, the Board stated:

"The Board hereby reaffirms its November 21, 1968, opinion. *It has been and still is the Board's position that when a Federal savings and loan association has adopted the bylaw set forth in § 544.6(g), said bylaw provides the sole and exclusive means of communication between members of the association, and no member of such association is entitled to obtain, inspect or copy the membership list.* The Board considers that the release or dis-

closure of the membership list, even though such list does not reflect the amount of savings of each member, could cause substantial harm to the association and/or its members, and would violate the privacy of the members. Further, the Board believes that individual members of the association have no need to obtain, inspect or copy the membership list, so long as the association is complying with bylaw (g). In this regard, it has been the Board's experience that bylaw (g) provides a fair and effective means of proxy solicitation by members." 39 Fed.Reg. 38636 (1974). (Emphasis added.)

In light of the plain words of the Board Ruling, there can no longer be any possible doubt that Bylaw (g), once adopted by an association, provides, with regard to the use of the association's membership records, the only means of communication between members of the association and preempts any federal common law right to inspect the membership list.

The district court's reliance on the *Murphy, Durnin,* and *Ochs* decisions was inapposite. All three of these cases arose before the Board authorized federal savings and loan associations to adopt Bylaw (g), and the associations involved had no procedure whereby a member could communicate with other members. The courts in these cases correctly recognized the inconsistency of giving the members of a federal savings and loan association the right to vote but providing no means of communication among members. As Judge Friendly noted in *Murphy,* due to the gap in the Board's regulations, the court was required to "flesh out" the regulations by use of federal common law. 388 F.2d at 611.[7] Since the decisions in the cases relied upon by the district court, however, the Board, by authorizing Bylaw (g), has "fleshed out" its regulations by providing a means whereby a member of an association can communicate with another member. The federal common law is, therefore, no longer applicable in this area. Illinois v. City of Milwaukee, 406 U.S. 91, 107, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); Arizona v. California, 373 U.S. 546, 565, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963).[8]

### Reasonableness

The plaintiffs contend, however, that even if Bylaw (g) preempts the federal common law, the bylaw is unreasonable.

The need for some means of communication between the members of a federal savings and loan association is clear. The charter and bylaws prescribed by the Board (12 C.F.R. § 544) expressly provide for the participation of the members in the affairs of the association. All holders of savings accounts and all borrowers from the association are members of the association and are entitled to vote.[9] Members may vote in person

---

**7.** Similarly, in *Durnin,* the court noted that "more would be required than *silence* of the regulations to overcome the general 'common law' right of a member of a corporation to inspect and copy the membership list." 218 F.Supp. at 719. (Emphasis added.)

**8.** Under Rule 14a–7 of the Securities and Exchange Commission, 17 C.F.R. § 240.14a–7, the corporate management has the option of either mailing communications of requesting shareholders or "in lieu thereof" furnishing a shareholder list. Section 28(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78bb(a), provides *inter alia*:

"The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity . . . ."

At least one federal court has held that where the state statute provides for shareholder inspection of the shareholder list, the federal rule does not preempt the shareholder's right under the state statute. Wood, Walker & Co. v. Evans, 300 F.Supp. 171 (D.Colo.1969), aff'd, 461 F.2d 852 (10th Cir. 1972); II L. Loss, Securities Regulations 890 n. 143 (2d ed. 1961). No section comparable to § 28 of the Securities Exchange Act exists in the Home Owners' Loan Act of 1933.

**9.** Each holder of a savings account is permitted to cast one vote for each $100, or fraction thereof, of the withdrawal value of his account. A borrowing member is permitted, as a borrower, to cast one vote. No member may cast more than 50 votes. A majority of

or by proxy. Annual meetings of the members are required; special meetings must be called on the written request of members holding in the aggregate at least one-tenth of the capital of the association. The directors of the association are elected by the members at the annual meetings. Moreover, at each annual meeting the officers are required to make a full report of the financial condition of the association and of its progress for the preceding year and outline a program for the succeeding year. Any amendment, addition, alteration, change or repeal of the association's charter must be submitted to and approved by the members.

█ Republic contends that a savings and loan association is particularly sensitive to any change in management or any proxy fight, regardless of the outcome, in that any such change or proxy fight can lead to significant savings withdrawals. The mechanism set up for member participation, including the right to vote on directors, indicates, however, that the Federal Home Loan Bank Board has determined that the right of a member to participate in the association outweighs any risk of savings withdrawals due to proxy fights or changes in management. As the courts in *Murphy, Ochs,* and *Durnin* recognized, the rights of the association member are analogous to those of a corporate shareholder,[10] and

in order for these rights to be more than idle gestures, association members, like corporate shareholders, must have some means of communicating with one another.

Balanced against this interest in communication are certain concerns of the association and the other members. The association has a valid interest in protecting the membership list from commercial use. The public, as well as the members, moreover, has an interest in maintaining the ordinary business operations of the association, which may be disrupted if a significant number of members seeks to inspect and copy the membership list shortly before each annual meeting.[11] Furthermore, the members of the association will have an interest in maintaining their privacy, particularly since deposits with a federal savings and loan association are essentially savings investments, as opposed to risk investments. Bylaw (g) was clearly an attempt to accommodate these interests and yet, at the same time, permit a fair and efficient means of communication for the members of the association.[12]

█ The plaintiffs contend, however, that access to the membership list is nonetheless essential since their message can only be conveyed effectively through personal face-to-face conversation. We find this argument unpersuasive.[13] The

all votes cast at any meeting of members determines any question. The right to vote is determined by a specified closing date. 12 C.F.R. § 544.

10. "While the [member of the federal savings and loan association] does not possess the far-reaching powers guaranteed the [corporate shareholder] by statute, their basic rights and duties are quite similar, if not identical." *Ochs, supra,* 268 N.Y.S.2d at 297, 215 N.E.2d at 488.

11. Republic has approximately 24,000 members.

12. The Board itself indicated that it was, through Bylaw (g), attempting to balance the various interests involved. In its 1968 opinion, the Board stated:

"[T]he bylaw provision enables the solicitation of proxies to be carred out without the risk of harm to the association which might

be caused by members who seek the identity of other members under the guise of proxy solicitation, but with the intention of utilizing the information thus obtained for improper purposes."
The bylaw was, however, merely permissive. The board apparently believes that where an association does not adopt the bylaw, state law will control. Prather, Savings Accounts 84 (4th ed. 1970). See footnote 16, *infra.*

13. We also find, although not resolving the question on this basis, the plaintiffs' argument somewhat incredible. Our incredulity arises from the fact that while the plaintiffs claim inability to pay approximately $1000 for the purpose of direct mailing pursuant to Bylaw (g), they somehow are going to muster enough person-power and time for face-to-face contact with a substantial proportion of some 24,000 members. If the plaintiffs merely wanted to copy the list for the purpose of

bylaw does not prohibit face-to-face contact. The plaintiffs could simply include in their written communication to their fellow members a notice of an informal meeting to discuss their views. Or the plaintiffs could include in the submitted material a request for a personal interview or a telephone number which the members could call for further information. In addition, the plaintiffs are, of course, free to advertise for meetings and solicit personal contacts by notices and pamphlets in the neighborhood.[14] The plaintiffs' witnesses, in fact, testified that they had already personally contacted other members of Republic through "block meetings." The plaintiffs admittedly, under the bylaw, cannot, as they would like, use the membership list to go uninvited to the homes of their fellow members to communicate their views. The other members of the association may not, however, share this desire for such unsolicited face-to-face confrontations at their homes.

The plaintiffs also point out that, under most state statutes, corporate shareholders have the right to inspect the corporation's shareholder list, for a proper purpose. As indicated earlier, we agree that the rights of the federal savings and loan association member are analogous to the right of the corporate shareholder. There are, however, significant differences between the institutions involved. The association member can withdraw, at will, his entire investment; the typical corporate shareholder, on the other hand, has no assurance that, on any particular date, he will be able to sell his stock for a profit or even the amount he paid for it. While not of great significance, another difference is found in obligations assumed by savings and loan associations for payment of interest, whereas corporate dividends will

fluctuate with the profits earned by the corporation. In addition, a federal savings and loan association, unlike a corporation, is supervised and controlled by the government with respect to its creation, bylaws, officers, manner of doing business, investments, expenses, reserves, and accounting. Deposits in federal savings and loan associations, up to a maximum of $40,000, furthermore, are insured by the Federal Savings and Loan Insurance Corporation.

█ It is true that the members of the association may well, as here, wish to communicate with one another about matters which relate to the association but are not within the scope of the federal regulation. However, given the federal regulation of the associations, the insurance of the deposits, and the savings, as opposed to risk, nature of the deposits, we cannot say that Bylaw (g) is unreasonable simply because it is slightly more restrictive than statutes dealing with corporations.

Bylaw (g), moreover, will apply evenly to all members of an association. The Board, in its 1968 opinion, expressly stated that association directors who seek to communicate with the members must also follow the procedure outlined in the bylaw:

"Mr. Hadge, as a director, has no greater communication rights than those afforded to the other members of the Association. . . . There is no provision in the governing statute, the Home Owners' Loan Act of 1933, as amended, or in the Board's regulations which, directly or by implication, authorizes a director of a Federal association, which has adopted permissive bylaw (g), to communicate with members in a manner or by means other than that required by such bylaw."[15]

---

mailing invitations to face-to-face meetings, the mailing could be accomplished by utilization of Bylaw (g).

**14.** According to the plaintiffs, one half of the members of Republic live in one postal zip-code area.

**15.** The incumbent director may have an advantage over the challenger in that the proxy

committee, in the majority of cases, probably votes the revocable proxies of the members in favor of the incumbent. Further, incumbent directors have a built-in advantage over challengers in the day-to-day contact exercised by presumably friendly management with members. Also, we are not unmindful that advertisements in various forms may feature the

We also note that the Model Savings and Loan Act, Sections 11(a) and (b), prohibits access to the membership list absent "express action and authority of the board of directors" and provides instead for an association-mailing procedure much like that found in Bylaw (g). A substantial number of states have adopted the Model Act or similar legislation.[16]

The plaintiffs argue, however, that the bylaw is unreasonable in that compliance would be too costly. The record indicates that the cost of mailing a communication to approximately half of the members of the association would be $1,153. The plaintiffs contend that this figure is unreasonable in light of the "costless face-to-face contact" which could be utilized if they had access to the membership list. See footnote 13, *supra.* Even assuming *arguendo* that the cost of mailing will exceed the cost of face-to-face contact, this court has noted that "the fact that a government regulation may cause economic hardship to a party does not make such regulation unreasonable." H & H Tire Co. v. United States Dep't of Transp., 471 F.2d 350, 354 (7th Cir. 1972).

We conclude that Bylaw (g) provides a reasonable, fair, and efficient means of communication for members of a federal savings and loan association. It permits communication and proxy solicitation, with only a slight restriction on the methods utilized by the requesting member, and yet, at the same time, avoids the risk of harm to the association and the invasion of privacy which might accompany the disclosure of the membership list.

*Constitutionality*

■ The plaintiffs' final contention is that the bylaw infringes on their First Amendment rights in that it prevents face-to-face communication. The Supreme Court, the plaintiffs note, has recognized that there may be "particular qualities inherent in sustained, face-to-face debate, discussion and questioning." Kleindienst v. Mandel, 408 U.S. 753, 765, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683 (1972).

However, as explained earlier, Bylaw (g) does not prohibit face-to-face conversations. At most, it restricts direct, unsolicited visits to the members' homes. In Breard v. Alexandria, 341 U.S. 622, 642, 71 S.Ct. 920, 932, 95 L.Ed. 1233 (1951), the Court upheld, against a First Amendment attack, a city ordinance forbidding door-to-door solicitation without the request or invitation of the homeowner. The Court in *Breard* noted: "Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. Rights other than those of the advocates are involved."

"[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).

---

identity and other background information regarding incumbent directors. The plaintiffs, however, do not challenge these incumbent advantages in this appeal but limit themselves to seeking access to the membership list. Moreover, while arguments can persuasively be made for benefits flowing from continuity of good management, we do not rest our decision upon any theory of a vested right of management to continue in office.

**16.** E. g., Alaska Stat. §§ 06.30.115–06.30.130; Ariz.Rev.Stat.Ann. § 6–421; Fla.Stat.Ann.

§ 665.111; Ill.Rev.Stat. Ch. 32, § 748; Idaho Code Ann. § 26–1829; Iowa Code Ann. § 534.5; Mich.Stat.Ann. §§ 23.540(231), 23.540(232), M.C.L.A. §§ 489.631, 489.632; Minn. Stat.Ann. § 51A.11; Miss.Code Ann. § 81–11–5; N.J.Stat.Ann. §§ 17:12B–117–17:12B–120; Ore.Rev.Stat. § 722.303; Pa.Stat. Title 15, § 5513; S.D.Code Ann. §§ 52–9–9 and 52–9–10; Utah Code Ann. § 7–13–45; Va.Code Ann. § 6.1–195.46.

The plaintiffs here do not challenge the constitutional power of the Government to issue Bylaw (g). We have found, moreover, that the bylaw does serve a substantial governmental interest. Furthermore, the restriction on the plaintiffs' First Amendment rights, we have concluded, is relatively slight and certainly no greater than necessary to protect the governmental interests.

■ The bylaw does provide that the association need not send out the material of the requesting member if the request is "made for an improper purpose." The plaintiffs do not contend that a requirement of proper purpose is an unconstitutional limitation on their First Amendment rights.[17] Assuming the existence of a common law right to inspect the membership list, such a right would, in fact, be similarly qualified by a requirement that it be exercised in good faith and for a proper purpose. *Murphy, supra*, 388 F.2d at 612 n. 2; *Durnin, supra*, 218 F.Supp. at 718; *Ochs, supra*, 268 N.Y.S.2d at 298, 215 N.E.2d at 489; 2 Hornstein, Corporation Law & Practice § 611 (1959); Annot., 15 A.L.R.2d 11 (1951). Generally, a purpose has been deemed "proper" if it concerns "the welfare of the corporation or the welfare of the shareholder *qua* shareholder. A purpose is improper if adverse to the interest of the corporation or unrelated to the applicant's interests as a shareholder." Hornstein, *supra* at § 612. Under Bylaw (g), moreover, an "improper purpose" cannot be ascribed to any matter which "may properly be considered at a meeting of members." The desire of a member to become a director is, therefore, clearly a proper purpose. See *Ochs, supra,* 268 N.Y.S.2d at 298, 215 N.E.2d at 489.

■ Provided the requesting member has such a proper purpose [18] (and has submitted the informational data required under the bylaw), the association must, under Bylaw (g), mail the requesting member's communication to the other members of the association. The bylaw does not provide any grounds, other than improper purpose, as a justification for an association's refusal to mail the communication, provided the informational data is supplied. Should the association apply the bylaw improperly, the requesting member can, of course, seek appropriate relief.[19]

---

**17.** Since the plaintiffs never submitted material to Republic pursuant to Bylaw (g), there is, of course, no allegation that Republic applied the bylaw in an improper or unconstitutional manner.

**18.** We need not decide at this time which party has the burden of showing a proper or improper purpose, when that fact is disputed.

**19.** In reaching our decision we had some question with regard to the requirement that "a copy of such communication be submitted" when the requirement was considered in juxtaposition with the provision that the association should process the member's request "unless made for an improper purpose." This conceivably contains overtones of both reasonableness and First Amendment questions. If, however, a copy of the communication were not submitted in advance there would be no way in which it could be ascertained in advance that the mailing was not for an improper purpose, e. g., the sale of merchandise. Further, as a practical answer we have no question that a copy of any communication sent generally to the members would lodge in the hands of the incumbent board, who were also members, within hours after the delivery of the mailing.

We must assume that the association cannot properly reject the procedures provided for in Bylaw (g) simply because they do not like statements in the communication if in fact the communication is "in relation to any matter which may be properly considered at a meeting of members."

If either the association or a member believes that the proxy material of the other side is false or misleading (as opposed to being submitted for an improper purpose), appropriate relief should be sought under 12 C.F.R. § 569.4, which provides, *inter alia*:

"No solicitation of a proxy shall be made by means of any statement, form of proxy, notice of meeting, or other communication, written or oral, which:

\* \* \* \* \* \*

"(c)(1) Contains any statement that is false or misleading with respect to any material fact, or (2) omits to state any material fact (i) necessary in order to make the statements therein not false or misleading or (ii) necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter that has subsequently become false or misleading."

We conclude that, given the valid governmental interest at stake and the relatively slight and incidental restriction of the plaintiffs' alleged First Amendment freedoms, Bylaw (g) is constitutional.

The judgment of the district court is reversed with directions that the defendants' motion to dismiss the second amended complaint be granted.

Reversed and remanded.

## APPENDIX
Bylaw (g)

"(g) Communications with Members. Every member of the association shall have the right to inspect the records of the association which pertain solely to his own accounts. Every member shall have the right to communicate with other members in relation to any matter which may properly be considered at a meeting of members. The association may not defeat such right by a redemption of the member's savings account in the association. Any member requesting a communication with other members as provided herein shall, not less than 30 days prior to the date of an annual meeting and not less than 10 days prior to the date of a special meeting, furnish the association with the following information, in writing and subscribed by him: (1) His full name and address; (2) the nature and extent of his interest in the association at the time his application is made; (3) a statement of the reasons for and purposes of the communication which he desires to make with other members; (4) a copy of such communication; and (5) the date of the annual or special meeting of the members of the association at which the matter will be presented for consideration. Upon receipt of such request, unless made for an improper purpose, the association shall, within 10 days of receipt in the case of an annual meeting and within 3 days of receipt in the case of a special meeting, notify the member ei-

ther (i) of the number of the association's members and of the estimated amount of the association's reasonable costs and expenses of mailing the communication to its members, or (ii) of its determination not to honor the request because the latter fails to comply with the provisions of this section. After receipt of such amount and sufficient copies of the member's communication, the association shall mail the same to all its members by a class of mail specified by the requesting member within 7 days of receipt of such amount and copies in the case of an annual meeting and at the earliest practicable date prior to the meeting in the case of a special meeting (or, in either case, such later date as the requesting member may specify)."

The constitutionality of this regulation is not in dispute here. With regard to the constitutionality of the proxy rules of the Securities and Exchange Commission, see SEC v. May, 229 F.2d 123 (2d Cir. 1956); Note, Freedom of Expression in a Commercial Context, 78 Harv. L.Rev. 1191, 1205–06 (1965); Note, Securities and Exchange Commission Regulation of Proxy Contests, 69 Harv.L.Rev. 1462, 1472–73 (1956). *Cf.* Donaldson v. Read Magazine, Inc., 333 U.S. 178, 190, 68 S.Ct. 591, 92 L.Ed. 628 (1948).