Edmund J. MURPHY, Charles A. Nolan, Jr., Dominick J. Eadicicco and James F. Connell, Jr., Plaintiffs-Appellees,

v.

COLONIAL FEDERAL SAVINGS AND LOAN ASSOCIATION, Curtis E. Neumann, Louis Corread, Frederick S. Forde, Charles De Nisco and Joseph Conti, Defendants-Appellants.

No. 185, Docket 31738.

United States Court of Appeals Second Circuit.

Argued Oct. 26, 1967.

Decided Dec. 11, 1967.

Daniel McNamara, Brooklyn, N.Y., for defendants-appellants.

Marshall G. Kaplan, Brooklyn, N.Y., for plaintiffs-appellees.

Before FRIENDLY, KAUFMAN and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge:

The complaint in this action in the District Court for the Eastern District of New York, petitioning for a declaratory judgment and appropriate further relief, 28 U.S.C. §§ 2201, 2202 centers around management's refusal to provide a dissident group with a list of persons eligible to vote for directorships in a federal savings and loan association. The plaintiffs allege that they are "shareholder-depositors" in the defendant, Colonial Federal Savings and Loan Association; that each of them was nominated for director on January 7, 1966; that a demand was made upon the association for a list of persons eligible to vote at the annual meeting on January 19; that the demand was ignored, a motion for adjournment was denied, and the directors proposed by the management were elected and certified. The Association moved to dismiss for lack of federal jurisdiction and failure to state a claim on which relief could be granted; plaintiffs then amended their complaint to add the directors elected at the meeting as defendants and in other respects not here material. Chief Judge Zavatt denied the motion to dismiss but stayed the action pending an application by plaintiffs to the Federal Home Loan Bank Board for an administrative determination pursuant to 12 U. S.C. § 1464(d) (2) (A).[1]

---

1. This provides:

"If, in the opinion of the Board, an association is violating or has violated, or the Board has reasonable cause to believe that the association is about to violate, a law, rule, regulation, or charter or other condition imposed in writing by the Board in connection with the granting of any application or other request by the association, or written agreement entered into with the Board, or is engaging or has engaged, or the Board has reasonable cause to believe that the association is about to engage, in an unsafe or unsound practice, the Board may issue and serve upon the association a notice of charges in respect thereof. The notice shall contain a statement of the facts constituting the alleged violation or violations or the unsafe or unsound practice or practices, and shall fix a time and place at which a hearing will be held to determine whether an order to cease and desist therefrom should issue against the association. Such hearing shall be fixed for a date not earlier than thirty days nor later than sixty days after

On January 16, 1967, the Home Loan Bank Board adopted a resolution denying the application. A letter from its Assistant Secretary approved by the Board explained this on the highly technical—we are tempted to say hypertechnical—ground that although plaintiffs' right to inspect the list had been judicially established in a case pending in the New York courts at the time of the election and finally determined a month thereafter, Murphy v. Colonial Federal Savings and Loan Ass'n, 17 N.Y.2d 593, 268 N.Y.S.2d 348, 215 N.E.2d 525 (1966); see also Ochs v. Washington Heights Federal Savings and Loan Ass'n, 17 N.Y.2d 82, 268 N.Y.S.2d 294, 215 N.E.2d 485 (1966), the gravamen of their petition to the Board was not that "a right to *inspect* was sought or denied" but that "a demand was made *for a list* and was denied," see fn. 2 infra. Nothing daunted, plaintiffs moved for summary judgment. Judge Dooling granted the motion, holding that the complaint raised a question arising under the laws of the United States, 28 U.S.C. § 1331; that the election was unfair because of the denial of plaintiffs' right to be informed of the electorate; and that the negative action of the Home Loan Bank Board did not bar judicial relief. Properly taking note of the problem of jurisdictional amount which apparently had not been raised by anyone, he thought that "perhaps, it sufficiently appears since the matter in controversy is the right to participate effectively in the governance of the Association. Cf. Wahyou v. Central Valley National Bank, 9th Cir. 1966, 361 F.2d 755."

■ 12 U.S.C. § 1464(a) authorizes the Federal Home Loan Bank Board to provide for the organization and operation of federal savings and loan associations "under such rules and regulations as it may prescribe." The Board's regulations, 12 C.F.R. § 544.1(4), provide that members may vote in person or by proxy. Question naturally arises whether a member desiring to enlist the aid of others in an election is entitled to find out who they are. Such an issue, which requires a fleshing out of the Board's regulations, is one of federal law. Cf. Illinois Steel Co. v. B. & O. R.R., 320 U.S. 508, 510, 64 S.Ct. 322, 88 L.Ed. 259 (1944); Federal Reserve Bank etc. v. Atlanta Trust Co., 91 F.2d 283, 285, 117 A.L.R. 1160 (5 Cir. 1937); Durnin v. Allentown Federal Savings and Loan Ass'n, 218 F.Supp. 716 (E.D.Pa.1963). This would become readily apparent if the common law of the state where the association operated denied members a right of inspection; Congress could hardly have intended that the rights of members of federal savings and loan associations to fair elections should vary with quirks of local law.

■ Appellants are mistaken in contending that federal jurisdiction is forbidden by 28 U.S.C. § 1349 providing that:

> "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock."

Although on a strictly literal approach, any controversy concerning the interpretation of a federal statute or regulation governing the internal affairs of a federal corporation could be said to be

service of such notice unless an earlier or a later date is set by the Board at the request of the association. Unless the association shall appear at the hearing by a duly authorized representative, it shall be deemed to have consented to the issuance of the cease-and-desist order. In the event of such consent, or if upon the record made at any such hearing the Board shall find that any violation or unsafe or unsound practice specified in the notice of charges has been established, the Board may issue and serve upon the association an order to cease and desist from any such violation or practice. Such order may, by provisions which may be mandatory or otherwise, require the association and its directors, officers, employees, and agents to cease and desist from the same, and, further, to take affirmative action to correct the conditions resulting from any such violation or practice."

grounded upon federal incorporation, such cases were not at all the "mischief and defect" at which the statute, § 12 of the Judges' Bill of 1925, 43 Stat. 936, 941, was aimed. The purpose rather was to stem "the flood of litigation to which the federal courts were * * * subjected" as a result of the decision in Pacific Railroad Removal Cases, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319 (1885), that every action by or against a federal corporation presented a federal question, see Hart & Wechsler, The Federal Courts and the Federal System, pp. 730, 752 (1953), by generalizing the earlier legislation, 38 Stat. 803 (1915), which had prohibited railway corporations from resorting to the federal courts because of a federal charter. As Mr. Justice Van Devanter explained to the Senate Judiciary Committee, the bill extended "the railroad section so as to cover any kind of Federal corporation. If there happens to be some other ground for taking the case into a federal court, it can go there. But federal incorporation alone is not enough." Frankfurter & Landis, The Business of the Supreme Court, 272–273, fn. 55 (1927). It is immaterial that the state courts also may deal with the internal affairs of federal savings and loan associations, as the New York courts did in the cases cited above; when they do this, they are nonetheless applying federal law. See Local 174, Teamsters etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

■ Since the district court was plainly right in holding that an election of directors in which the opposition is deprived of any reasonable opportunity to ascertain the names and addresses of electors known to the management was unfair under federal law,[2] we pass to appellants' contention that the Home Loan Bank Board's resolution denying the petition precluded judicial relief. Chief Judge Zavatt properly stayed the action pending application to the Board under 12 U.S.C. § 1464(d) (2) (A), when he found that this recently enacted provision authorized the agency to issue a notice of charges both in the case of the election, compare Reich v. Webb, 336 F.2d 153 (9 Cir. 1964), and in that of the refusal to allow inspection of a membership list.[3] Far East Conference v. United States, 342 U.S. 570, 574–575, 72 S.Ct. 492, 96 L. Ed. 576 (1952). But this section permits the Board to use its discretion in deciding whether or not to act on an application for relief, and does not suggest that its refusal to issue a notice of charges would prevent a complainant from seeking judicial relief that would be otherwise obtainable. The argument that the plaintiffs are barred thus must rest on a con-

---

2. Although appellants have made no point of it, we note that the judgment directed Colonial to furnish plaintiffs' attorney with a list of member and borrower depositors eligible to vote. While the only right generally recognized at common law was to inspect the books, Guthrie v. Harkness, 199 U.S. 148, 26 S. Ct. 4, 50 L.Ed. 130 (1905), more than twenty states have passed "shareholder voting list statutes," many modeled on § 29 of the Model Business Corporation Act, see Note, Shareholder Voting List Statutes—Are They Effective?, 26 U. of Cinn.L.Rev. 288 (1957). See also Rule 14a–7 under the Securities Exchange Act of 1934. It seems quite appropriate to adopt as "federal common law" a principle that has achieved such widespread recognition, see New York, N. H. & H. R.R. v. R. F. C., 180 F.2d 241, 244 (2 Cir. 1950); United States v. Wegematic Corp., 360 F.2d 674, 676 (2 Cir. 1966),

as the right of a stockholder with a legitimate purpose to inspect a list available to management or, if he prefers, to have one furnished on paying the cost of making it. For reasons pointed out by the New York Court of Appeals in Ochs v. Washington Heights Federal Savings and Loan Ass'n, supra, 17 N.Y.2d at 87–88, 268 N.Y.S.2d at 298, 215 N.E.2d 485, the list procedure is peculiarly desirable in the case of savings and loan associations since inspection of the books themselves would disclose the financial affairs of depositor members.

3. The statement of the Board's General Counsel as to its lack of power to do this, referred to in a footnote to Ochs v. Washington Heights Federal Savings & Loan Ass'n, supra, 17 N.Y.2d at 85, 268 N.Y.S.2d at 296, 215 N.E.2d 485, antedated the amendment, 80 Stat. 1028, 1029, giving the statute its present form.

struction of two other parts of § 1464 also enacted in 1966. Section 1464(d) (7) (B), quoted in the margin,[4] provides for review of the Board's cease and desist orders in the courts of appeals, but is silent as to review of the Board's refusal to institute a proceeding, and § 1464(d) (8) states that "except as otherwise provided in this subsection no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this subsection, or to review, modify, suspend, terminate, or set aside any such notice or order." Although both provisions regulate judicial review only when the Board has issued a cease and desist order, Colonial's argument would require us to infer from this statutory framework a congressional intention to preclude citizens from exercising their ordinary judicial remedies. The impropriety of any such construction appears *a fortiori* from de-

cisions that provision for review of certain types of federal administrative action does not without more prevent review of other types under the general equity jurisdiction of the district courts. Stark v. Wickard, 321 U.S. 288, 307–308, 64 S.Ct. 559, 88 L.Ed. 733 (1944); Toilet Goods Ass'n v. Gardner, 360 F.2d 677, 683–684 (2 Cir. 1966), aff'd 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967), and Abbott Laboratories v. Gardner, 387 U.S. 136, 139–141, 87 S.Ct. 1507, 18 L.Ed. 2d 681 (1967); cf. Fahey v. Mallonee, 332 U.S. 245, 256, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947).[5] Moreover, a consideration of the legislative history of the Financial Institutions Supervisory Act, of which the amendments were a part, demonstrates that the proposed interpretation would be inconsistent with the reasons for enactment of the statute. That history makes Congress' central concern clear—"The Federal supervisory agencies

4. "Any party to the proceeding, or any person required by an order issued under this subsection to cease and desist from any of the violations or practices stated therein, may obtain a review of any order served pursuant to subparagraph (A) of this paragraph (other than an order issued with the consent of the association or the director or officer or other person concerned, or an order issued under paragraph (5) (A) of this subsection), by filing in the court of appeals of the United States for the circuit in which the home office of the association is located, or in the United States Court of Appeals for the District of Columbia Circuit, within thirty days after the date of service of such order, a written petition praying that the order of the Board be modified, terminated, or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the Board shall file in the court the record in the proceeding, as provided in section 2112 of title 28 [of the United States Code]. Upon the filing of such petition, such court shall have jurisdiction, which upon the filing of the record shall except as provided in the last sentence of said subparagraph (A) be exclusive, to affirm, modify, terminate, or set aside, in whole or in part, the order of the Board. Review of such proceedings shall be had as provided in chapter 7 of title 5 [of the United States Code].

The judgment and decree of the court shall be final, except that the same shall be subject to review by the Supreme Court upon certiorari as provided in section 1254 of title 28 [of the United States Code]."

5. The permissive and discretionary nature of the Board's power under 12 U.S.C. § 1464(d) (2) (A) argues against a view, not here urged, that the remedy for refusal to issue a notice of charges lies in an action against the Board in the District Court under the analogy of United States v. Interstate Commerce Comm'n, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949). Compare cases denying such a remedy for refusal to issue charges by the General Counsel of the NLRB—Hourihan v. NLRB, 91 U.S.App. D.C. 316, 201 F.2d 187 (1952), cert denied 345 U.S. 930, 73 S.Ct. 792, 97 L.Ed. 1359 (1953); Retail Store Employees Union Local etc. v. Rothman, 112 U.S. App.D.C. 2, 298 F.2d 330 (1962); Division 1267, Amalgamated Ass'n etc. v. Ordman, 116 U.S.App.D.C. 7, 320 F.2d 729 (1963); NLRB v. Tennessee Prod's & Chemical Corp., etc., 329 F.2d 873 (6 Cir.), cert. denied, 379 U.S. 833, 85 S.Ct. 66, 13 L.Ed.2d 42 (1964). It seems much more likely that Congress intended parties to be able to pursue their ordinary remedies in the courts, with the court having the Board's reason for inaction before it and giving th·s such weight as was considered appropriate.

in varying degrees have been seriously handicapped in their efforts to prevent irresponsible and undesirable practices by deficiencies in the statutory remedies. Experience has often demonstrated that the remedies now available to the Federal supervisory agencies are not only too drastic for use in many cases, but are also too cumbersome to bring about prompt correction and promptness is very often vitally important." Sen.Rep. No. 1482, 89th Cong., 2d Sess. (1966), 3 U.S.Code Cong. & Ad.News, pp. 3532, 3537(1966). With the need for speed in view, Congress carefully limited the occasions on which judicial control of administrative action was procurable, see also 12 U.S.C. § 1464(d) (3) (B). Its effort to create an effective system of sanctions would be hampered rather than forwarded by reading these provisions to paralyze the judiciary when the agency has refused to act.

The question of jurisdictional amount is more difficult than the judge thought. For reasons indicated in the margin, if 28 U.S.C. § 1331 were the only source of federal jurisdiction, we should be obliged to remand for further findings, as we did in Wolff v. Selective Service Local Board No. 16, 372 F.2d 817, 826 (2 Cir. 1967), whether the requisite monetary interest could be shown.[6] However, 28 U.S.C. § 1337, which does not require a monetary minimum in "any proceeding arising under any Act of Congress regulating commerce," provides an alternative source of jurisdiction. As stated in Professor Bunn's influential book on Jurisdiction and Practice of the Courts of the United States 71–72 (1949), although when "the words were used in 1911 'acts regulating commerce' pretty clearly meant 'The Act to Regulate Commerce,'" the phrase had come to mean "all acts whose constitutional basis is the commerce clause." See Imm v. Union Railroad Co., 289 F.2d 858 (3d Cir. 1961) (Goodrich, J.), citing many decisions of the past several decades, see 289 F.2d at 860 fn. 3.[7] Commentators have

---

6. If the complaint had contained a formal allegation that the matter in controversy exceeded $10,000 exclusive of interests and costs, as apparently it did in the *Wahyou* case on which the judge relied, see 361 F.2d at 756, and defendants had not "traversed" this, all would have been well since there were no allegations to "qualify or detract from it in such measure that when all are considered together it cannot be fairly said that jurisdiction appears on the face of the complaint * * *." KVOS, Inc. v. Associated Press, 299 U.S. 269, 277, 57 S.Ct. 197, 200, 81 L.Ed. 183 (1936). But here there was no such allegation—indeed not even a statement as to the amount of plaintiffs' deposits or stock ownership—and, apart from the court's own obligation to take note of the problem, the issue was thus sufficiently raised by defendant's motion to dismiss for lack of "jurisdiction of the subject matter of this action." We are unable to follow the judge's belief that the required amount "sufficiently appears since the matter in controversy is the right to participate effectively in the governance of the Association," since, as thus stated, the right is hardly susceptible of monetary measurement. See Whitney v. American Shipbuilding Co., 197 F. 777 (E.D.Ohio 1911) (Day, J.); 1 Moore, Federal Practice

¶0.92 [5]. In view of our disposition of the case, it is unnecessary to decide whether the plaintiffs would be required to show that the difference to the value of their membership between management of the association by themselves and by the defendants exceeded $10,000, as the strict theory of the "plaintiff viewpoint" rule would indicate, see Central Mexico Light & Power Co. v. Munch, 116 F.2d 85, 87 (2 Cir. 1940), but see Wright, Federal Courts, § 34, or whether it will suffice in cases such as this if plaintiffs, alone or with other members who may associate with them, see 1 Moore, Federal Practice ¶0.97 [3], can show an interest in the corporation worth more than the jurisdictional amount. Textron, Inc. v. American Woolen Co., 122 F.Supp. 305, 308–309 (D.Mass.1954) (Aldrich, J.); Rosen v. Alleghany Corp., 133 F.Supp. 858, 864 (S.D.N.Y.1955); cf. Bitterman v. L. & N. R.R., 207 U.S. 205, 224–226, 28 S.Ct. 91, 52 L.Ed. 171 (1907).

7. In Caulfield v. United States Department of Agriculture, 293 F.2d 217, 222 n. 10 (1961), dismissed 369 U.S. 858, 82 S.Ct. 946, 8 L.Ed.2d 16 (1962), the Fifth Circuit, en banc, adopted the "commerce clause" test in holding a suit under the Soil Bank Act to fall under § 1337.

unanimously approved this liberal construction, since the amount involved is normally of little relevance to the desirability of federal jurisdiction in federal question cases. See ALI Study of the Division of Jurisdiction Between State and Federal Courts 200–203 (4th tent. draft 1966) ; Wright, Federal Courts 92 (1963) ; Friedenthal, New Limitations on Federal Jurisdiction, 11 Stan.L.Rev. 213, 217–218 (1959) ; Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law and Contemporary Problems 216, 225–26 (1948). The broad construction that had been given § 1337 was inferentially approved by the 1958 Congress that raised the jurisdictional amount in federal question and diversity cases to $10,000—"While this bill applies the $10,000 minimum limitation to cases involving Federal questions, its effect will be greater on diversity cases since many of the so-called Federal question cases will be exempt from its provisions. This is for the reason that Federal courts are expressly given original jurisdiction without limitation as to the amount claimed in a great many areas of Federal law. * * * When all of these types of cases are eliminated, the only significant categories of 'Federal question' cases subject to the jurisdictional amount are suits under the Jones Act and suits contesting the constitutionality of State statutes. In both of these types of cases the amount claimed usually exceeds $10,000." S.Rep. No. 1830, 85th Cong., 2d Sess., 2 U.S.Code Cong & Ad.News 3099, 3103 (1958).[8]

■ It is true that federal regulation of finance is not grounded in the commerce power alone. As Chief Justice Hughes explained in Norman v. B. & O.

R.R., 294 U.S. 240, 303, 55 S.Ct. 407, 414, 79 L.Ed. 885 (1935) :

> The broad and comprehensive national authority over the subjects of revenue, finance and currency is derived from the aggregate of the powers granted to the Congress, embracing the powers to lay and collect taxes, to borrow money, to regulate commerce with foreign nations and among the several states, to coin money, regulate the value thereof, and of foreign coin, and fix the standards of weights and measures, and the added express power "to make all laws which shall be necessary and proper for carrying into execution" the other enumerated powers.

See also McCulloch v. State of Maryland, 17 U.S. (4 Wheat.) 316, 406, 4 L.Ed. 579 (1819). But to found jurisdiction upon § 1337, it is not requisite that the commerce clause be the exclusive source of Federal power; it suffices that it be a significant one. And whether or not a distinction between §§ 1331 and 1337 is called for when the federal law invoked as a basis for jurisdiction is wholly non-statutory save in the sense that the authority for its creation lies in the Constitution, a treaty, or act of Congress—a point ventilated but not decided in T. B. Harms Co. v. Eliscu, 339 F.2d 823, 828 (2 Cir.), cert. denied, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965), and McFaddin Express, Inc. v. Adley Corp., 346 F.2d 424, 427 (2 Cir. 1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966)—here the federal law asserted as the basis for jurisdiction is a regulation adopted by a government agency under authority of an "Act of Congress."

The judgment is affirmed.

---

**8.** Professor Wright has argued that, in spite of this legislative history, Jones Act suits fall within the scope of § 1337, Federal Courts, supra, 92; he also points out that many suits contesting the constitutionality of state statutes can be brought under provisions, notably 28 U.S.C. § 1343, having no jurisdictional amount. What remains important is that Congress' belief that very few federal question cases would be left under § 1331 must have assumed a continued broad construction of other sections.