**William M. WALKER, et al., Plaintiffs,**

v.

**CARDINAL SAVINGS AND LOAN ASSOCIATION, et al., Defendants.**

Civ. A. No. 88–0123–R.

United States District Court, E.D. Virginia, Richmond Division.

July 19, 1988.

William G. Broaddus, Anne M. Whittemore, Warren E. Zirkle, McGuire, Woods, Battle & Boothe, Richmond, Va., Robert H. Loeffler, Philip D. Bartz and Daniel A. O'Fallon, Morrison & Foerster, Washington, D.C., for Cardinal Sav. and Loan Ass'n.

Francis T. Eck, Thomas P. Collins, Eck, Lewis, Anderson & Collins, Richmond, Va., for Brown.

James C. Roberts, Robert L. Brooke, Mays & Valentine, Richmond, Va., for Lissenden, November, Viener, Howlette, Ginn, Forloine and Spriggs.

Mahlon G. Funk, Jr., John R. Walk, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for Harlow.

Samuel W. Hixon, III, William A. Young, Jr., Williams, Mullen, Christian & Dobbins P.C., Richmond, Va., for McLaren.

Charles F. Midkiff, Steve Theisen, Midkiff & Associates, Richmond, Va., for Sanders.

George B. Little, L.B. Cann, III, James T. Moore, III, Little, Parsley & Cluverius, Richmond, Va., for Heilman, Walker and Owens.

## MEMORANDUM OPINION AND ORDER

SPENCER, District Judge.

The defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) have been argued by the parties and are now ripe for decision. The following statement of the case takes into account the plaintiffs' decision to abandon certain elements of the original complaint, and to dismiss all their claims against one of the defendants.

### I

The plaintiffs are stockholders of Cardinal Savings and Loan Association, a Virgi-

nia-chartered, federally-insured, stock savings and loan association, and one of the defendants in this case. The remaining defendants were, at all times pertinent to the complaint, members of Cardinal's Board of Directors, or officers of Cardinal, or both.

The plaintiffs allege:

(A) failure to disclose in violation of 12 C.F.R. subpart 563g.2(a), a regulation of the Federal Home Loan Bank Board ("the Board") promulgated pursuant to Section 5 of the Home Owners' Loan Act of 1933 ("HOLA") (12 U.S.C. section 1464) (Count I);

(B) fraud in violation of: 12 C.F.R. subpart 563g.10 (Count II), section 12(2) of the Securities Act of 1933 (15 U.S.C. section 77*l* (2)) (Count III), section 17(a) of the 1933 Act (15 U.S.C. section 77q), section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. section 78j(b)), and Rule 10b–5 (Count IV), Va.Code Ann. section 13.1–522.-A(ii) (Count V), and common law principles (Count VI);

(C) "controlling person" liability as provided in 15 U.S.C. sections 77o and 78t, and Va.Code Ann. section 13.1–522.C for damages arising under Counts III through V (Count VII); and

(D) a contract rescission claim based on mutual mistake (Count VIII).

Assuming the best possible case for the plaintiffs, the defendants made a series of material misstatements or omissions at a meeting held on March 10, 1987 for the purpose of inducing the plaintiffs to buy stock in Cardinal. These misstatements and omissions related to Cardinal's financial condition, its financial prospects, a planned public offering of Cardinal's stock, the possibility of a takeover, and the plaintiffs' chances to realize a substantial gain on their investment in Cardinal. All de-

fendants not present at this meeting knew or should have known of the meeting, its purpose, and the content of the defendants' communications with the plaintiffs.

In late March 1987, one of the plaintiffs received a copy of a preliminary offering circular which was purported to have been filed with the Board, and which described a public offering of Cardinal stock. The circular contained material misstatements and omissions in connection with the purpose of the offering, Cardinal's business practices, the status of Cardinal's loan assets, the extent of subscription agreements, Cardinal's liquidity and investments, and Cardinal's litigation exposure. Cardinal's financial statements in the circular also overstated its performance and financial condition. The defendants knew or should have known the contents of the circular, the fact that it would be provided to the plaintiffs, and that the plaintiffs would rely on the circular in deciding whether to buy Cardinal stock.

In reliance on the above misstatements and omissions, the plaintiffs purchased a total of 236,929 Cardinal shares for $1,182,-716.

## II

The defendants contend that: (A) there is no private right of action under the Board regulations at issue in this case; (B) there is no private right of action under section 17(a) of the 1933 Act; (C) Virginia law does not permit an award of punitive damages on the allegations of Count VI; and (D) the complaint does not adequately allege controlling person liability.[1] These contentions will be addressed in turn.

A. *Private Right of Action under Subparts 563g.2 and 563g.10*

The parties agree that neither HOLA nor the regulations at issue[2] ex-

---

**1.** Defendant Harlow also contends that Count V should be dismissed as against him because "[t]here is no allegation to support the conclusion that Harlow 'sold' a security as defined in Virginia Code section 13.1–501(h)." (Br. 2). This contention is refuted on the face of the complaint (Para. 53).

**2.** These regulations provide, in pertinent part, as follows:

(a) *General.* No insured institution shall offer or sell, directly or indirectly, any security issued by it unless:

(1) The offer or sale is accompanied or preceded by an offering circular which includes the information required by this part

pressly provide a private damages action based on the securities violations that the plaintiffs allege in this case. The Court must therefore survey the pertinent statutory and regulatory background to determine whether the legislative intent favors implication of a private remedy. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed. 2d 26 (1975). Legislative intent includes agency intent where Congress has explicitly left a gap for the agency to fill. *See, e.g., Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (where Congress did not actually have an intent regarding grouping of pollution-emitting devices for regulatory purposes, reasonable EPA intent controlled).

■ Section 5 of HOLA (12 U.S.C. section 1464), the pertinent statutory authority, neither prohibits nor regulates the conduct on which the plaintiffs' complaint is based, and for good reason. Congress had a much broader purpose. Congress intended to ensure the vitality of federal[3] savings and loan associations and to provide for the financing of homes. *See Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 160, 102 S.Ct. 3014, 3026, 73 L.Ed.2d 664 (1982). Congress intended that the Board's principal concern in supervising thrift institutions would be their soundness, which benefits depositors and

preserves public confidence in the home financing system. *See* 12 U.S.C. section 1464(a)(1); S.Rep. No. 902, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 6119, 6128. Congress chose to particularize its general intent by delegating its own legislative power to the Board. *Id.* at 6129. Obviously "[i]t would have been difficult for Congress to give the Bank Board a broader mandate." *Glendale Fed. Sav. and Loan Ass'n v. Fox,* 459 F.Supp. 903, 910 (C.D.Cal.1978) (quoted approvingly with regard to HOLA in *Fidelity Fed.,* 458 U.S. at 161, 102 S.Ct. at 3026).

Nothing in the pertinent statutory language or legislative history indicates that Congress contemplated a private remedy for the regulatory violations alleged in this case. *See Eureka Fed. Sav. & Loan Ass'n v. Kidwell,* 672 F.Supp. 436, 438 (N.D.Cal. 1987) (Congressional choice not to signal implied remedy when it amended HOLA in 1966 and 1982 weighed heavily against implication); *First Hawaiian Bank v. Alexander,* 558 F.Supp. 1128, 1131 (D.Haw. 1983) (distinguishing *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) by absence of evidence Congress considered existence or nonexistence of implied remedy when it enacted HOLA). Securities investors like the plaintiffs herein are not "especial beneficiaries" under HOLA whose protection and benefit were the primary congressional goal of the statute. HOLA was enacted for the protection of the public at large, not for the especial benefit of any particular class. *See Taylor*

---

and which has been filed and declared effective pursuant to this part; or

(2) An exemption is available under this part.

12 C.F.R. subpart 563g.2(a).

Unsafe or unsound practices.

It shall constitute an unsafe or unsound practice within the meaning of section 5(d) of the Home Owner's Loan Act of 1933 (12 U.S. C. 1464(d)) and section 407(e) of the National Housing Act of 1934 (12 U.S.C. 1730(e)) for any person, directly or indirectly,

(a) To employ any device, scheme or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make statements made,

in light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates as a fraud or deceit upon any person, in connection with the purchase or sale of any security or an insured institution. Nothing in this section shall be construed as a limitation on the applicability of section 10(b) of the Exchange Act (15 U.S. C. 78j(b)) or Rule 10b–5 promulgated thereunder (17 CFR 240.10b–5).

12 C.F.R. subpart 563g.10.

3. State-chartered institutions like Cardinal bring themselves into the legislative scheme by accepting federal deposit insurance. 12 U.S.C. section 1726(b).

v. Citizens Sav. and Loan Ass'n, 846 F.2d 1320, 1322 (11th Cir.1988) (citing Cannon v. University of Chicago, 441 U.S. 677, 692 n. 13, 99 S.Ct. 1946, 1955 n. 13, 60 L.Ed.2d 560 (1979)). The plaintiffs have shown no nexus between the soundness of thrift institutions and the issuance and trading of their securities that would make a private remedy "necessary to effectuate Congress' goals." Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 477, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977); Piper v. Chris–Craft Industries, Inc., 430 U.S. 1, 26, 97 S.Ct. 926, 942, 51 L.Ed.2d 124 (1977). Finding no Congressional intent favoring an implied remedy in the case at bar, we turn to the question of agency intent.

To the extent that any nexus between savings and loans' soundness and offering or sale of their securities has been identified, the Board has specifically and fully addressed it. Subparts 563g.2 and 563g.10, respectively, resemble securities statutes prohibiting violations of the registration and prospectus requirements of the 1933 Act (15 U.S.C. section 77l) and antifraud provisions of the 1934 Act (15 U.S.C. section 78j(b)). In establishing disclosure procedures under subpart 563g.2, the Board adopted many of the forms and regulations of the Securities and Exchange Commission. This was done because

> such forms and regulations require the disclosure of information which is considered to be material to an investment decision, they are recognized in the capital markets, and it would be difficult for insured institutions to compete for capital in those markets if their offering documents were not comparable with those of other companies also seeking capital.

Proposed FHLBB Securities Offerings Rules, 50 Fed.Reg. 38,839, 38,846 (1985). In response to the objection that subpart 563g.2 might increase the potential liability of insured thrifts by opening the door to private damages, the Board explicitly disclaimed the intention to create any private right of action. Id. at 38,845. The Board

also explicitly disclaimed any intention to create a private right of action under subpart 563g.10. Final Securities Offerings Rules, 50 Fed.Reg. 53,284, 53,287 (1985). In adopting an anti-fraud provision that was concededly modeled after Rule 10b–5, the Board simply intended "to make it more clear exactly which types of mistatements [sic] and omissions are covered by the rule." Id. The Board's reasonable, explicit intent weighs conclusively against implication of a private damages remedy in the regulations at issue.

The plaintiffs cite five cases to support their arguments in favor of implying a remedy in this case. Milberg v. Lawrence Cedarhurst Fed. Sav. and Loan Ass'n, 496 F.2d 523 (2d Cir.1974); Murphy v. Colonial Fed. Sav. and Loan Ass'n, 388 F.2d 609 (2d Cir.1967); King v. Edwards, 559 F.Supp. 75 (N.D.Ga.1982); Mortensen v. First Fed. Sav. and Loan Ass'n, 79 F.R.D. 603 (D.N.J.1978); City Fed. Sav. and Loan Ass'n v. Crowley, 393 F.Supp. 644 (E.D. Wis.1975). Assuming for this discussion that Milberg and Murphy were not abrogated by Cort v. Ash, cf. Taylor, 846 F.2d at 1323, both held in pertinent part that private parties could invoke judicial review of the Board's refusal to act in a regulatory matter. Milberg, 496 F.2d at 525; Murphy, 388 F.2d at 613 and 613 n. 5; see also Mortensen, 79 F.R.D. at 615 (discussing Milberg and Murphy). This result differs sharply from implication of a private securities action for damages. In the post-Cort period, the Mortensen court arrived at a result similar to Milberg and Murphy, but refused to address the issue of appropriate relief.[4] 79 F.R.D. at 617. The King opinion repeatedly emphasized that it involved equitable relief rather than damages. 559 F.Supp. at 83 n. 6 and 84 n. 8. Crowley implied a damages remedy in a HOLA regulation governing certain conduct of savings and loans, but did so on a pre-Cort analysis significantly different from the analysis applicable today. See 393 F.Supp. at 652–53. None of the cases

---

**4.** In dicta, the Mortensen court also stated: "The Court doubts whether relief in an implied cause of action, particularly as an award of damages, can be greater than that which the Board has authority to [impose] or customarily imposes." 79 F.R.D. at 617.

just described involved violations of Board regulations having cognates in federal securities disclosure and trading law. These cases are too distinct in their subject matter, procedural postures, and analytical approaches to be useful in deciding the present issue.

*King* deserves some further scrutiny. Congress' intent that the Board govern savings and loans "in connection with proxy contests by rules similar to those applicable to proxy contests under the 1934 Act" was one of the primary elements in the *King* analysis. A private remedy for improper proxy solicitations had been implied under the 1934 Act, and the *King* court considered it "logical to assume that Congress intended a private right of action to exist under the FHLBB rules." *Id.* (footnote omitted). This should be read as "under FHLBB *proxy solicitation* rules" because, as the *King* court observed, "implication of private remedies can only be made on a statute-by-statute basis." *Id.* at 84. No counterpart to the legislative mandate relied on in *King* has been identified for purposes of the case at bar. Unlike the situation presented in *King*, Congress chose not to direct the Board to adopt regulations like those at issue in this case, even though it clearly had the occasion to do so.

The Court has considered the plaintiffs' argument that securities investors could be left without a remedy for registration and prospectus violations by savings and loans unless a damages remedy is implied under subpart 563g.2.[5] In making this argument, of course, the plaintiffs are not taking into account the administrative remedies that violations of subpart 563g.2 could trigger. In view of the Board's considerable power to effectuate Congressional intent under HOLA, this Court is not persuaded that it must rush in where Congress and the Board elected not to tread. Counts I and II will therefore be dismissed.

**B. *Private Right of Action under Section 17(a) of the 1933 Act***

■ The defendants argue that this Court should reconsider precedent implying a private remedy under section 17(a) of the 1933 Act and dismiss the plaintiffs' claim thereunder. Upon consideration of the pertinent authority, the Court will decline the defendants' invitation.

When it last considered this issue, the United States Court of Appeals for the Fourth Circuit stated: "Although there is authority to the contrary, this circuit is committed to the rule that section 17(a) supports a private damage claim for the fraudulent sale of a security." *Newman v. Prior*, 518 F.2d 97, 99 (4th Cir.1975).[6] The Fourth Circuit's commitment rested in large part on the scienter requirement that section 17(a) shared at that time with Section 10(b) of the 1934 Act. *See Johns Hopkins University v. Hutton*, 488 F.2d 912, 914 (4th Cir.1973), *cert. denied*, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). The existence of a private right of action under section 10(b) is settled law. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 385, 103 S.Ct. 683, 689, 74 L.Ed.2d 548 (1983). It is logical, therefore, to base a private damages remedy on section 17(a)'s similarity to section 10(b). The United States Supreme Court has held since *Newman*, however, that sections 17(a)(2) and (3) have no scienter requirement. *Aaron v. SEC*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). Accordingly, the affinity between sections 10(b) and 17(a) is narrower than it formerly appeared. The defendants argue that *Aaron* undermined *Newman*'s implication of a section 17(a) private remedy altogether.

*Newman* controls decision of this case. *Aaron* did not address implied remedies and it considered scienter only with regard to subsections 17(a)(2) and (3). The plaintiffs have pleaded a cause of action under section 17(a)(1), which invokes common law fraud and presumably its scienter require-

---

**5.** Securities issued by regulated savings and loan associations are exempt from the registration and prospectus provisions of the securities laws. 15 U.S.C. section 77c(a)(5)(A).

**6.** Newman did not apply the *Cort* analysis.

ment as well: "any device, scheme, or artifice to defraud...."[7] *Newman* and *Aaron* can and should be harmonized in cases like the one at bar. *See Baker v. Eagle Aircraft Co.*, 642 F.Supp. 1005 (D.Or.1986). Accordingly, the motions to dismiss the plaintiffs' claim under section 17(a) will be denied.

### C. *Punitive Damages under Common Law Fraud Count*

■ Under the law applicable to the plaintiffs' common law fraud count, "punitive damages may be recovered only if there is proof, either direct or circumstantial, showing actual malice." *Jordan v. Sauve*, 219 Va. 448, 453, 247 S.E.2d 739, 741 (1978). "Actual malice ... may be established by showing that the [defendants'] action was prompted by ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another." *Lee v. Southland Corp.*, 219 Va. 23, 27, 244 S.E.2d 756, 759 (1978). The plaintiffs allege that the defendants acted knowingly and recklessly, wrongfully intending "to deceive them and thereby cause them to part with" over $1,000,000. (Br.Opp.25). Since the instant motion arises under Fed.R.Civ.P. Rule 12(b)(6) rather than under Rule 56, the Court must assume that all the allegations summarized at the beginning of this opinion are true. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, the defendants have not shown "to a certainty" that, "under any state of facts which could be proved," they could not be found to have acted with wicked intention, or a conscious disregard of the plaintiffs' rights. *See Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir.1969). With respect to common law punitive damages, the motions to dismiss will be denied.

### D. *Controlling Person Liability*

■ In Count VII, the plaintiffs allege that all defendants except Cardinal were "controlling persons" of Cardinal under section 15 of the 1933 Act, section 20(a) of the 1934 Act, and section 13.1–522.C of the Virginia Act, and thus are secondarily liable for the alleged violations of section 12(2), section 10(b), and section 13.1–522.-A(ii) of the respective Acts. The "outside directors"[8] contend that Count VII should be dismissed because it fails to specify both the nature of their power of control and their culpable conduct in this case.

"Control," in the secondary liability context, is a fact issue. *See, e.g., Haynes v. Anderson & Strudwick, Inc.*, 508 F.Supp. 1303, 1314–15 (E.D.Va.1981); *Sun First National Bank of Orlando v. Miller*, 77 F.R.D. 430, 439 (S.D.N.Y.1978). Assuming that Cardinal's alleged primary violations are established at trial, the plaintiffs would have the burden on this issue of going forward with evidence demonstrating the defendants' "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of [Cardinal], whether through the ownership of voting securities, by contract, or otherwise." *American General Insurance Co. v. Equitable General Corp.*, 493 F.Supp. 721, 751 (E.D.Va.1980) (quoting SEC Rule 405). Power to control is only the first of two elements: the plaintiffs must also allege and prove the defendants' culpable conduct. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987); *Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir.1981); *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 185 (3d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed. 2d 648 (1982); *Carpenter v. Harris, Upham & Co., Inc.*, 594 F.2d 388, 394 (4th Cir.1979). At the pleading stage, a mere allegation of an outside director's status does not sufficiently state his or her "power to control or influence the particular transactions giving rise to the securities violation." *See Wool*, 818 F.2d at 1441; *see also Herm*, 663 F.2d at 685.[9]

---

**7.** This phraseological rib was borrowed at Rule 10b–5's genesis. L. Loss, *Fundamentals of Securities Regulation* 726–27 (2d ed. 1988).

**8.** Defendants Forloine, Ginn, Heilman, Howlette, Lissenden, November, Owens, Spriggs, Viener, and Walker.

**9.** The plaintiffs state that their allegation of the outside directors' status "establishes a cause of

Study of the complaint raises an additional concern. Count VII seeks to impose secondary liability for fraud, which must ordinarily be pleaded with particularity even under the liberal standards of federal notice pleading. Fed.R.Civ.P. 9(b).

> The purposes advanced by this requirement are to insure that allegations are specific enough to inform defendant and enable him to prepare an effective response and defense, to eliminate complaints filed in order to find unknown wrongs through discovery, and to protect defendants from unfounded charges that involve moral turpitude.

*Sweeney Co. of Maryland v. Engineers– Constructors, Inc.*, 109 F.R.D. 358, 360 (E.D.Va.1986). When potential fraud liability is passed through to outside directors under the controlling persons statutes, fairness requires that the particularity requirement's protections be passed through as well. In the controlling persons context, plaintiffs must plead each defendant outside director's authority to participate in or effect the type of primary violation alleged, and that director's culpable conduct on the specific occasion in question. Count VII is deficient in both respects.

The Court believes, however, that the plaintiffs should be permitted to amend their complaint after an appropriately limited opportunity for discovery.

> It may take only one or two questions to bring out that a particular officer has no substantial influence.... On the other hand, the answer to the first few questions may demonstrate the need for a fairly extensive inquiry into the entire relationship of the particular officer or director to the rest of the managing group.

L. Loss, *supra* n. 7, at 403. Accordingly, the plaintiffs will be permitted to propound written interrogatories to the outside directors, after which they will have leave to amend the complaint or submit a stipulation of dismissal as they deem appropriate. All other Count VII discovery as to these directors will be stayed. The motion to dismiss Count VII will be denied.

### III

For the above reasons it is hereby ORDERED as follows:

A. In accordance with the representations in their brief in opposition to the motion for summary judgment, the plaintiffs' claims for (1) punitive damages under section 17(a) of the 1933 Act, and (2) "controlling person" liability for violations of HOLA and section 17(a) are hereby DISMISSED.

B. Counts I and II of the complaint are DISMISSED.

C. Discovery of the outside directors as to Count VII is STAYED, except that the plaintiffs may propound written interrogatories to each outside director alleged to be a "controlling person." A maximum of thirty (30) interrogatories, including subparts, may be propounded to each such defendant. The interrogatories must be received by counsel for the outside directors within 11 days of the date of this order, and responses thereto must be served within 14 days thereafter. The plaintiffs shall amend the complaint or stipulate dismissal, as appropriate, within 7 days after service of responses.

D. As to all other issues raised in the motions to dismiss, the motions are DENIED.

---

action" in this district and a majority of federal courts (Br.Opp. 30–31), but the plaintiffs' authority does not begin to support this proposition. *Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 716 (2d Cir.1980) (discussing good faith defense and respondeat superior principles); *American General,* 493 F.Supp. at 752–54 (decision after trial drawing sharp distinction between inside and outside directors); *In re Commonwealth Oil/TESORO Petroleum Securities Litigation,* 484 F.Supp. 253, 269 (W.D.Tex.

1979) (independent public accountant's status as auditor of financial statements did not make it a controlling person); *Sharp v. Coopers & Lybrand,* 457 F.Supp. 879, 892 (E.D.Pa.1978) (accountant liable where evidence showed it drafted opinion letter at issue). The plaintiffs also cite a case holding that the evidence at trial did not establish the good faith defense as a matter of law. *Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111, 1114 (5th Cir.1980).